**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| JASON MYERS, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION** |
| | ) | **AND RECOMMENDATION** |
| v. | ) | |
| | ) | |
| ROUSH FENWAY RACING, LLC, | ) | 1:09CV508 |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant's motion to dismiss Plaintiff's claims for wrongful discharge in violation of North Carolina public policy and for unpaid wages under the North Carolina Wage and Hour Act. (docket no. 15.) Plaintiff has responded to the motion, and, in this posture, the matter is ripe for disposition. For the following reasons, it will be recommended that the court grant Defendant's motion to dismiss Plaintiff's wrongful discharge and wage and hour claims.

**Background**

Plaintiff Jason Myers is a former employee of Defendant Roush Fenway Racing, LLC. Plaintiff's employment was governed by a written Employment Agreement dated January 11, 2008, with a definite term of employment through December 31, 2010, unless Plaintiff was terminated for cause before then. Defendant terminated Plaintiff's employment in February 2009. Plaintiff alleges the following claims against Defendant in the first amended complaint: (1) violation of the

Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq.; (2) wrongful discharge in violation of North Carolina public policy as stated in the North Carolina Equal Employment Practices Act, N.C. GEN. STAT. § 143-422.1 et seq.; (3) breach of contract; and (4) and a claim for unpaid wages under the North Carolina Wage and Hour Act ("Wage and Hour Act"), N.C. GEN. STAT. § 95-25.1 et seq. Defendant has filed a partial motion to dismiss, seeking dismissal of the wrongful discharge and Wage and Hour Act claims.

**Alleged Facts[1]**

Defendant owns and operates race teams that compete in various NASCAR races. Plaintiff began his employment with Defendant on or about September 2002. (First Amended Compl. ¶ 5, docket no. 10.) Plaintiff first worked as a mechanic, and in January 2006 was promoted to Car Chief for the Carl Edwards #99 car. (*Id.* ¶¶ 5, 6.) In January 2008, Plaintiff and Defendant executed an Employment Agreement, with the stated term of Plaintiff's employment to run until December 31, 2010. (*See* Def.'s Ex. A, docket no. 8.) Section Four of the Employment Agreement, titled "Salary and Benefits," states:

> Employee shall receive a base salary at the rate of [a certain specified amount] per annum for his duties as a Cup Car Chief, which shall become effective January 2, 2008 and remain in effect until December 31, 2008. Beginning January 1, 2009, Employee shall receive annual salary increases for the term of this Agreement at the guaranteed minimum rate of Four Percent (4%) per year. In addition,

---

[1] The alleged facts are taken as true for the purpose of the pending motion, and I recite only those alleged facts relevant to the pending motion.

> beginning February 1, 2009, Employee shall be compensated for his Over-the-Wall duties at the rate of [a certain specified amount] per week.

The Employment Agreement also states that the "Employee will not be terminated before the expiration of this Agreement absent 'cause' for termination," and goes on to list specific conduct that would constitute cause.  (*Id.* ¶ C & § 3(a).)  Section 1 of the Employment Agreement states that the "[e]mployee's initial job assignments are Car Chief and Over-the-Wall Tire Changer for the No. 99 NASCAR Sprint Cup Series race team.  Employee acknowledges and agrees that [Defendant] may reassign Employee at any time in its sole discretion."  (*Id.* § 1.)  Section 4 goes on to state that "[i]n the event Employee is reassigned by [Defendant], Employee's compensation shall be adjusted accordingly."  (*Id.* § 4.)

Plaintiff suffered from depression during his employment with Defendant, and on around March 25, 2008, Plaintiff attempted suicide.  (*See* First Amended Compl. ¶ 10.)  At that time, Plaintiff's wife informed Bob Osborne, Crew Chief for the Carl Edwards car, that Plaintiff had attempted suicide.  (*Id.*)  Plaintiff attempted suicide again in October 2008.  (*Id.* ¶ 11.)  In around November 2008, Defendant informed Plaintiff that he was being removed from his position as Car Chief for the 2009 race season.  (*Id.* ¶ 9.)  Defendant reassigned Plaintiff to the position of a traveling mechanic and substantially reduced his salary.  (*Id.* ¶ 53.)  Defendant's General Manager Robbie Reiser told Plaintiff that his removal as Car Chief was not due to

-3-

performance and that Plaintiff would hopefully be returned to Car Chief soon. (*Id.* ¶ 9.)

On February 10, 2009, Plaintiff again attempted suicide and was hospitalized. (*Id.* ¶ 12.) That day, Plaintiff's wife contacted Bob Osborne, Crew Chief for the Carl Edwards car, and told him about Plaintiff's suicide attempt. (*See id.* ¶¶ 10, 13.) Osborne expressed his opinion that it was just an attention tactic and further said that Plaintiff needed to see General Manager Reiser as soon as he got out of the hospital and to get on a plane to Daytona, as the Daytona 500 was scheduled for Sunday, February 15, 2009. (*Id.* ¶ 13.)

On Thursday February 12, 2009, Plaintiff's wife informed Defendant's General Manager Reiser of Plaintiff's suicide attempt and further informed Karen McCotter in Defendant's Human Resources Department that Plaintiff would require a medical leave of unspecified duration to receive treatment. (*Id.* ¶¶ 15, 16.) On that same day, Plaintiff was discharged from the hospital with a diagnosis of major depressive disorder and with encouragement to seek inpatient treatment. (*Id.* ¶ 18.) Hospital staff secured an appointment with a psychiatrist for Monday, February 16, 2009, for an evaluation of Plaintiff's depression. (*Id.*) An appointment with Plaintiff's family medical physician was also scheduled for February 16. (*Id.*)

On February 16, 2009, Plaintiff's psychiatrist completed an FMLA certification form for Plaintiff to take FMLA leave, with leave beginning February 16, 2009, and continuing until March 31, 2009, and listing a treatment schedule starting with partial

-4-

hospitalization followed by weekly therapy visits and monthly medical appointments. (*Id.* ¶ 19.) On February 16, 2009, Plaintiff's family medicine physician also completed an FMLA certification form, which corroborated Plaintiff's need for medical leave. (*Id.*)

On the afternoon of February 16, 2009, Plaintiff personally delivered two completed FMLA certification forms to Karen McCotter. McCotter reviewed the forms, accepted them, and told Plaintiff that she would need to discuss the forms with Defendant's president Geoff Smith. On February 17, 2009, Defendant terminated Plaintiff's employment for allegedly not notifying anyone that he would miss work on February 13. Plaintiff alleges that the real reason that Defendant terminated Plaintiff's employment was "due to his depression and/or his request for leave under the FMLA." (*Id.* ¶ 23.)

## Standard of Review on a Motion to Dismiss

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

-5-

The duty of fair notice under Rule 8(a), however, requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Supreme Court has instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citation omitted). *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (clarifying *Twombly*). With these principles in mind, the court now turns to the motion to dismiss.

**Discussion**

**I.    Defendant's Motion to Dismiss Plaintiff's Claim for Wrongful Discharge in Violation of North Carolina Public Policy as Stated in the North Carolina Equal Employment Practices Act**

In the first amended complaint, Plaintiff alleges a claim against Defendant for violation of North Carolina public policy as stated in the North Carolina Equal Employment Practices Act ("NCEEPA" or "the Act"), N.C. GEN. STAT. § 143-422.1 et seq. The Act states, in relevant part: "It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees." N.C. GEN. STAT. § 143-422.2. Plaintiff alleges that Defendant

-6-

terminated Plaintiff because of his mental illness, thus wrongfully discharging Plaintiff in contravention of the express public policy as stated in the NCEEPA.

In support of the motion to dismiss, Defendant contends that Plaintiff's claim for wrongful discharge fails as a matter of law because he was not employed with Defendant as an at-will employee as required to bring a claim for wrongful discharge under North Carolina law.  I agree.  The North Carolina Court of Appeals has expressly held that "the tort of wrongful discharge arises only in the context of employees at will."  *Wagoner v. Elkin City Sch.' Bd. of Educ.*, 113 N.C. App. 579, 588, 440 S.E.2d 119, 125 (1994).  The North Carolina courts have further stated that breach of contract is the sole remedy for a "wrongfully discharged employee who is employed for a definite term or who is subject to discharge only for just cause." *Claggett v. Wake Forest Univ.*, 126 N.C. App. 602, 611, 486 S.E.2d 443, 448 (1997) (affirming the dismissal of a plaintiff-professor's wrongful discharge claim, holding that where the employee was employed pursuant to teaching appointments of a definite time length, he was not an at-will employee and he was therefore "limited to an action in contract").  Here, Plaintiff was employed with Defendant pursuant to an Employment Agreement dated January 11, 2008 ("the Employment Agreement"). (*See* Def.'s Ex. A.)  Under the Employment Agreement, Plaintiff was employed with Defendant for a definite term through December 31, 2010, unless his employment was terminated earlier for cause, as defined in the agreement.  Furthermore, the Employment Agreement explicitly states that Defendant "waive[d] its right to

-7-

terminate [Plaintiff] at will." (*Id.* § 3(a).) Plaintiff's claim for wrongful discharge is barred because he was not an at-will employee, and the court should therefore grant Defendant's motion to dismiss the wrongful discharge claim.

In opposing the motion to dismiss, Plaintiff contends that the wrongful discharge claim should survive the motion to dismiss based on Plaintiff's alternative theory that the Employment Agreement is unenforceable because it lacks sufficient definiteness as to its essential terms.[2] Plaintiff contends that if the Employment Agreement is unenforceable, his status was that of an at-will employee, in which case he could bring a claim for wrongful discharge in violation of North Carolina public policy. Plaintiff contends, alternatively, even if the essential terms in the Employment Agreement do not render it fatally indefinite, then a jury should make findings of fact where the disputed contract language is ambiguous or vague. Plaintiff contends that factual determinations regarding the meaning of the contract will control whether Plaintiff is found to be employed at will, and the court should therefore not dismiss the wrongful discharge claim at this stage in the proceedings.

_____

[2] Plaintiff contends that he is arguing, alternatively, that the Employment Agreement fails for indefiniteness if its terms allowed Defendant to unilaterally demote Plaintiff and reduce his salary. Plaintiff interprets the Employment Agreement as giving Defendant the authority only to reassign Plaintiff to another Car Chief position within the company, and as being further limited to reassignments that would not reduce Plaintiff's base salary or take away his 4% annual raise. Plaintiff further alleges that if the Employment Agreement is enforceable, Defendant breached it by (1) demoting Plaintiff to a traveling mechanic position and substantially reducing his salary and by otherwise denying him his 4% annual raise in compensation; and by (2) terminating him without cause under Section 3(a) of the Employment Agreement. (First Amended Compl. ¶ 53.)

-8-

Plaintiff's argument fails. Regardless of whether the court later determines that the Employment Agreement is unenforceable, the fact is Plaintiff was employed pursuant to the Employment Agreement; he cannot, therefore, constitute an "at-will" employee for purposes of having the right to bring a claim for wrongful discharge in violation of the public policy of North Carolina. *See Googerdy v. N.C. A&T State Univ.*, 386 F. Supp. 2d 618, 626 n.4 (M.D.N.C. 2005) (where the plaintiff's employment was governed by a written contract, dismissing Plaintiff's wrongful discharge claim and rejecting his theory of alternative pleading as to that claim). Therefore, Plaintiff's wrongful discharge claim should be dismissed.

## II. Defendant's Motion to Dismiss Plaintiff's Claim for Unpaid Wages under the North Carolina Wage and Hour Act

The North Carolina Wage and Hour Act, N.C. GEN. STAT. § 95-25.1 et seq. ("Wage and Hour Act"), provides a private right of action to employees for recovery of unpaid wages owed, interest, liquidated damages, and attorneys fees. *See* N.C. GEN. STAT. § 95-25.22. The Wage and Hour Act protects employees from being denied payment of *earned* wages. *See Hamilton v. Memorex Telex Corp.*, 118 N.C. App. 1, 10, 454 S.E.2d 278, 282 (1995). Thus, the Act only requires an employer to pay those wages and benefits due when the employee has *actually performed the work* required to earn them. *See Narron v. Hardee's Food Sys., Inc.*, 75 N.C. App. 579, 583, 331 S.E.2d 205, 208 (1985).

I agree with Defendant that the Wage and Hour Act claim should be dismissed for the sole reason that Plaintiff does not allege that Defendant owes him any unpaid, *already earned* wages. Here, Plaintiff alleges two sources of unpaid compensation as the purported bases for his Wage and Hour Act claim: (1) compensation resulting from the difference in salaries from his position as Car Chief and his reassigned position as a mechanic; and (2) post-termination damages in accordance with his interpretation of the Employment Agreement. As for the salary differences claim, Plaintiff disputes the re-assignment to that position for lower pay. He *admits,* however, that he received compensation for his job as a mechanic; therefore, he is not asserting any claim for *earned* unpaid wages as to his mechanic's salary. Furthermore, as to alleged post-termination damages, Plaintiff contends that the Employment Agreement obligates Defendant to pay Plaintiff his salary through December 2010–even if he does not perform work through the end of the term–where Plaintiff is terminated without cause. Even if this is true, Plaintiff's remedy is through a breach of contract action, not the Wage and Hour Act.[3]

In sum, Plaintiff's Wage and Hour Act claim is fatally deficient because he is attempting to transform alleged contractual damages into a claim for wages under

[3] To the extent that Plaintiff contends that the remaining amounts owed to Plaintiff through the contract term are analogous to severance pay, which is expressly recoverable under the Wage and Hour Act, the agreement to employ Plaintiff through December 2010 unless he is fired with cause is not a promise of severance pay if he is fired without cause.

Case 1:09-cv-00508-JAB-WWD   Document 22   Filed 12/28/09   Page 10 of 12

the Act.  *See generally Narron*, 75 N.C. App. at 583, 331 S.E.2d at 208 ("[T]he Wage and Hour Act requires an employer to notify the employee in advance of the wages and benefits which he will earn and the conditions which must be met to earn them, and to pay those wages and benefits due when the employee has actually performed the work required to earn them.").  Finally, to the extent that Plaintiff contends that the Wage and Hour Act can be "reasonably interpreted" to allow him to recover unearned, contractual damages, this court is bound to apply the Act as it has been interpreted by the North Carolina courts.  The North Carolina courts have consistently interpreted the Act to exclude recovery of future, unearned wages.  *See Whitley v. Horton*, 168 N.C. App. 597, 608 S.E.2d 416 (2005) (unpublished) (observing that the North Carolina Court of Appeals in *Narron* stated the principle that "although the [Act's] definition [of wages] is broad enough to include things like 'sick pay' 'bonuses' or 'other amounts promised,' such items are compensable *only if the employee has actually worked the hours to earn the wages*") (emphasis added).  For all these reasons, Plaintiff's Wage and Hour Act claim should be dismissed.

**Conclusion**

For the reasons stated herein, it is **RECOMMENDED** that the court **GRANT** Defendant's motion to dismiss (docket no. 15), Plaintiff's claims for wrongful discharge, and for violations of the North Carolina Wage and Hour Act.  If the court grants Defendant's motion, the FMLA and breach of contract claims will remain.

Finally, the clerk is instructed to note that Defendant's previous motion to dismiss (docket no. 8), which has also been referred to the undersigned, was rendered moot by the filing of the first amended complaint and is no longer pending.

_____

WALLACE W. DIXON
United States Magistrate Judge

December 28, 2009